## Sanders v. Felzman et al.

June 1, 1948.

Rehearing denied October 5, 1948.

Davis M. Howerton and Leonard C. Fielder for appellant.

Dysard & Dysard for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Reversing.

The sole question involved in this appeal is the custody of Sue Ann Sanders, the eleven year old daughter of the appellant and his former wife, appellee, Evelyn Felzman. Appellant and appellee were divorced in October 1943, and in that divorce judgment the custody of the daughter was awarded to appellee. Appellant filed this suit and prayed that the aforesaid judgment be modified and that he be awarded the permanent care and custody of the child. The judgment of the lower court awarded custody of the child to appellee during the school year and that part of the Christmas holidays prior to the day after Christmas and to the appellant during the summer school holidays and that part of the Christmas holidays beginning the day after Christmas. From that judgment, appellant prosecutes this appeal.

### Facts in the Case

Appellant is 43 years of age and is employed as a

blast furnace foreman in the American Rolling Mills Co. at a salary of $425 per month. He owns his own home, in which he lives, on Bath Avenue in Ashland, a modern six-room house worth from eleven to twelve thousand dollars and free from mortgage. Since the divorce, both appellant and appellee have remarried to others and appellant has a sixteen month old daughter by his present wife. Appellee has no children by her present husband. When these parties separated, Sue Ann was sent to Cardome Academy at Georgetown, Ky. for one year and at the expiration of that year she returned to her father's home in Ashland and has been attending the Holy Family School in Ashland, which is about four blocks from her home, since that time. She has been in actual, though not legal, custody of her father up to the present time, except for about two months. In July of 1947, she went to Chicago to visit her mother who is now living there. She returned to Ashland on August 30, 1947, with her mother and this litigation started for the custody of the child.

After the divorce in 1943, appellee moved to Louisville where she was employed in the Naval Ordnance Plant. She later went to Dayton, Ohio, where she was employed at Wright Field. She then went to Washington, D. C., where she held a responsible position as home planning director and head of the decorating department in one of the largest department stores in Washington. She then went to Pogue's in Cincinnati. In Washington her salary was $80 per week and in Cincinnati, it was $75 per week. While the record is not clear as to exactly when she remarried, it was apparently while she was located in Cincinnati, and upon her marriage she moved to Chicago where her husband is employed by the Western Electric Co. The record does not show what salary he makes nor whether appellee is at present employed except as housekeeper for her husband. In Chicago she and her husband live on the west side in an apartment over what she calls a tavern, but which appellant describes as a saloon, in a section in which the foreign population largely predominates. According to her testimony she expects to move to a more desirable section as soon as she can obtain better living quarters which, in Chicago, like in all other cities, is sometimes very difficult. The child involved is a member of the Catholic

faith and there are two parochial schools near where the mother now lives in Chicago.

It is shown by the testimony that the child, Sue Ann Sanders, is a bright, lovable child; that she loves both her father and her mother; that she gets along well with her stepmother with whom she has been living for the past three or four years and is treated by her step-mother as though she were her own child. Although she was with her stepfather, George Felzman, only a few months last summer, it is said in a letter introduced in the evidence that he adores her. According to the record, both appellant and appellee are fit persons to have custody of the child.

### Conclusions

In determining the custody of a child, the decision must be made from the facts developed in each case, and previous decisions are of little value as precedents. Of course, the primary consideration in all cases is the welfare of the child. Another thing that should be given some weight is the desire and wishes of the child where the child has reached the age of discretion and is capable of making some decisions for herself, since the future welfare of the child will be largely determined by her happiness in the surroundings in which she lives. The age of a child has always been given some weight in determining its custody and we have often held that custody of a child of tender years, especially of a female child, should be given to its mother unless there are strong reasons against it.

Measured by these principles and by the evidence in this case, what is the best solution, in this particular case, of the always difficult question of deciding the custody of a child as between a mother and a father? While we have great respect for the decision of the Chancellor who decided otherwise, we believe from the evidence and from all the surrounding circumstances that he reached the wrong conclusion in this case when he awarded custody to the mother. The child is now almost 12 years of age and she testified firmly and intelligently at the hearing. She testified that she has many girl friends in Ashland where she has grown up and gone to school and, of course, she has none in Chicago, having met only one or two on a visit there last summer; that

she prefers to remain in Ashland and go to school there and live in Chicago with her mother during the summer vacation; that she would be happier in Ashland than in Chicago because she feels more at home in the former place; that if left free to make up her own mind without any court action, she would stay in Ashland and go to school and go to Chicago to be with her mother during the summer.

We think the preference of this child, who will soon be emerging into young womanhood, is entitled to great weight in our decision. Also of controlling weight is the matter of the surroundings in which she now lives in Ashland and those in which she would have to live in Chicago for the next few years at least. In Chicago she would live in a flat over a tavern or saloon which, according to the testimony, remains open all night and where liquor is sold and which has a "juke box" in more or less constant operation and which flat is located in a section of Chicago in which the foreign population predominates where she would have few playmates or friends of her station in life. In Ashland she would live in a comfortable, modern home, perhaps with a yard, in a good residential section with a father who makes a comfortable salary and with a stepmother with whom she says she gets along well and with a baby half-sister and near a Catholic school in which she has many friends and playmates. We think the surroundings in which this child has been reared and in which she is happy and contented should not be exchanged for the uncertainty of starting a new life in the second largest city in the country. In our opinion these things and the desire of the child, outweigh our natural inclination to award the custody of the daughter to her mother. We must also consider the fact that for the past five years, although she has had legal custody of the child, the mother has not sought actual custody because she has lived in five different cities during that time and there is no assurance that her present location in Chicago is of a permanent nature.

After careful reading of all the evidence and a thorough consideration of the whole case, we are of the opinion that the judgment of the lower court should be reversed and that in lieu thereof a judgment should be substituted awarding the custody of Sue Ann Sanders

to her father, the appellant, during the school year and to her mother during the summer school vacation period. We make no specific decision in regard to the Christmas holiday vacation since we believe that is a matter to be determined by the parties themselves and by the wishes of the child.

Judgment reversed.